**Sonja V. CRENSHAW, Plaintiff,**

v.

**DELRAY FARMS, INC., Defendant.**

**No. 96 C 4498.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 26, 1997.

Sonja V. Crenshaw, Chicago, IL, pro se.

Rick A. Gleason, Jodi Lynn Flynn, Rich A. Gleason & Associated, P.C., Chicago, IL, for plaintiff.

Brian Wegg Bulger, Michael Irving Leonard, Bates, Meckler, Bulger & Tilson, Chicago, IL, for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on the defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, this motion is granted.

## BACKGROUND

The following undisputed facts are gleaned primarily from the parties' 12(M) and 12(N) Statements. Plaintiff Sonja Crenshaw ("Crenshaw") is a twenty-nine year old black female who was employed by defendant Delray Farms, Inc. ("Delray") from August 1995 to August 10, 1996. During her first week of employment, Crenshaw was given a copy of Delray's employee handbook, which she read and became familiar with. The handbook set forth that Delray had a policy forbidding sexual harassment, that Delray discouraged its employees from sexually harassing each other, and that this policy was important to Delray. The handbook also stated, and Crenshaw was aware, the Delray had an "Open Door Policy", pursuant to which employees were encouraged to bring any complaints or concerns they might have to their manager's attention. This point was reiterated to Crenshaw by her manager during her first week of employment at Delray and also at a meeting Crenshaw attended in August 1995. Crenshaw understood that she was required to follow the rules and regulations in the handbook, which she felt were fair and reasonable, and that her failure to do so could result in disciplinary action or termination. Crenshaw also understood that the employee handbook did not promise that employees would receive raises or promotions; however, on March 28, 1996, she received a raise from $4.75 per hour to $5.25.

Crenshaw was employed at Delray's Halsted Street store, where she worked as a cashier from the time of her hiring until December 1995. During this period, Crenshaw did not experience any harassment or discrimination. In December 1995, Crenshaw was transferred to the meat department at Delray and given the position of "meat counter helper" or "server". During her first week in the meat department, Crenshaw was bent over, reaching into a meat case to take out some meat. At the same time, a co-worker, Harold Altman ("Altman"), also reached into the meat case with his right hand. As he was doing so, Altman grabbed Crenshaw's left breast and held it until Crenshaw reached up and pushed him away. Crenshaw told Altman to keep his hands off and reported the incident to David Baker ("Bak-

er"), the meat department supervisor. Baker told Crenshaw that Altman was an "asshole" who always did things like that, and he then went to the store manager's office and paged Altman.

The next week, Crenshaw was in the Delray lunchroom when Altman entered. She did not ask him to leave, despite his earlier conduct, because she thought that everything had been straightened out when Baker spoke to him. Altman approached her and other employees with a photo album containing pictures of his wedding and his child. After looking at the album, Altman told Crenshaw that his wife was fat and that he needed somebody small like her to pick up in the air and have sex with. Crenshaw ignored this comment and left the lunchroom, but she did not report the incident because she did not think that it was sexual harassment.

On or about December 13 or 14, Crenshaw was cleaning up at the end of her shift, in the presence of Altman and several other Delray employees and customers. Altman walked behind Crenshaw and grabbed and squeezed her buttocks with his right hand for several seconds. Crenshaw told Altman to keep his hands off of her. Altman, who was laughing and smiling, then told Crenshaw to go over and sweep his section; when she refused, he called her an "ignorant ass bitch." Crenshaw immediately reported this incident to Lee Chamblis, one of her supervisors, who told her that he was busy and could not do anything at the moment. Crenshaw, who had finished her shift, left the store upset and crying. Her husband, Demetrius Hill ("Hill"), was in the parking lot to pick her up, and she told him what happened. At this time, Altman and another employee left the store and entered the parking lot. Hill confronted Altman, telling him that if he had a problem with Crenshaw he should discuss it with management. Altman told Hill that Crenshaw had to give him the respect he deserved. After leaving Delray, Crenshaw went to her mother's house and called manager Chester Shipp ("Shipp"), who told her that he would deal with Altman in the morning. As a result of this incident, Altman was immediately transferred to another store and Crenshaw was suspended without pay for

seven days. Crenshaw does not assert that Altman harassed her after this time.

Around the same time as this incident, Crenshaw had been working in the meat department with Tommie Carroll ("Carroll") and "Eddie", when Carroll told her that he had a sick wife at home who could not have sex. Carroll told Crenshaw that "I bet you satisfy your husband", asked her if he could have sex with her, and stated that he would make Crenshaw feel really good because he "doesn't get it at home." Crenshaw told Carroll "no" and walked away. Eddie told Carroll to leave Crenshaw alone, and Baker told him "don't start no shit, you all leave Sonja alone." Crenshaw did not report this incident to anyone at Delray because she felt that Eddie's objection had addressed her concerns. Crenshaw was not harassed by Carroll again.

In February or March, 1996, Crenshaw was in the lunchroom with Roberto Aeyers ("Aeyers"). While she was sitting in a chair, Aeyers came up behind her, rubbed his penis on her back and said "Oh, mamasita." Crenshaw was not sure if it was in fact his penis, and the incident lasted about "half a second." Crenshaw got up, pushing her chair back hard, and told Aeyers to get his hands (sic) off of her. She then went to Cesar Martinez ("Martinez"), a manager, and reported the incident. Aeyers was immediately called to the store manager's office over the intercom, which Crenshaw felt properly and quickly addressed her complaint. Crenshaw was not harassed again by Aeyers in any manner.

In May 1996, while Crenshaw was again a cashier at Delray, meat department worker Sinatra Porter ("Porter") asked Crenshaw if she had a boyfriend. When she said that she was married, Porter asked her if she cheated around and told her that he had a lot of money and would give it to her if she would "be with him". Crenshaw reported this incident to manager Mike Guerin the same day, and manager George Theoharris ("Theoharris") paged Porter to the manager's office and gave him a written warning. Three or four days later, Porter grabbed Crenshaw by the arms as she was walking by and attempted to kiss her on the face. Crenshaw ran away and told Theoharris, who immediately

summoned Porter to the office and gave him a write–up for the incident. Crenshaw felt at the time that Delray's response was appropriate. About one week later, Crenshaw was in the women's bathroom with the door locked when Porter popped the lock open and came in. Porter allegedly attempted to grab Crenshaw, who pushed him away and ran to the front of the store. She reported this incident to Theoharris and two other supervisors, and Porter again received a written reprimand. Porter did not harass Crenshaw again after this incident. Furthermore, it was common for men to use the women's washroom at Delray when it was unoccupied, and the door lock could be easily opened from the outside.

On or around July 4, 1996, Crenshaw was waiting in the parking lot for a ride home from work, when she was approached by Alex Delaney ("Delaney"), a parking lot attendant. He told Crenshaw that the pants she was wearing "made his groins growl" and that he wanted to take her to the Taste of Chicago and then to a hotel. Crenshaw related that Delaney wanted to "eat me out" and "do all types of tricks with me". Crenshaw did not report this incident because she did not think it was necessary. Delaney did not harass Crenshaw after this point.

Crenshaw also asserts that a supervisor, Mike Guerin ("Guerin") harassed her as well. Crenshaw alleges that Guerin often put his arm around her, told her that she was his favorite girl, and said that he would take care of her. Guerin never said anything sexual to Crenshaw, and he did not touch her anywhere else on her body.

Finally, in early August 1996, Crenshaw was surrounded in the parking lot by supervisors "Paul" and "Charles" and managers Jim Keslinke and "Coaster". The men all yelled at her, threatened her job, and told her that her job was more important than caring for her sick son. Crenshaw was very scared, and ran to her mother's car. She left Delray and did not go back. On August 11, 1996, Crenshaw's employment with Delray ended. Immediately before her employment ended, Crenshaw was suspended for three days for not reporting to work; in all, she had been disciplined by Delray on seven different occasions. On July 23, 1996, Crenshaw filed the present suit against Delray, alleging that she was sexually harassed and retaliated against, in violation of Title VII of the Civil Rights Act of 1964. In response, Delray has filed this present motion for summary judgment. Before we turn to its merits, we will outline the legal standard which guides our inquiry.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once a motion has been filed for summary judgment, the burden shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.* With this in mind, we turn to the motion before us.

## DISCUSSION

In her complaint, Crenshaw alleges that she was discriminated against on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). A plaintiff can prove a Title VII claim by either direct evidence or by the indirect method of proof set out under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Under the direct method of proof, the plaintiff must show that her protected characteristic (i.e., sex) was a motivating factor in the challenged employment action. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1794–95, 104 L.Ed.2d 268 (1989). To avoid liability, the defendant must prove by a preponderance of the evidence that it would have taken the same action if the protected characteristic had not been considered. *Id.* Of course,

direct evidence of the factors motivating an employment decision is not always readily available. Therefore, the Supreme Court has established an alternative method of proof that relies on indirect evidence of discrimination.

Under the indirect method of proof, the plaintiff first must establish a prima facie case of discrimination. Once she does so, the burden of production shifts to the defendant to show a legitimate, non-discriminatory reason for the materially adverse employment action. *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 135 (7th Cir.1993), citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). If the defendant is able to produce a legitimate reason for the action, the burden shifts back to Plaintiff to persuade the court that the reason was merely a pretext for the action. *Crady*, 993 F.2d at 135, citing *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 232 (7th Cir. 1992).

 In her complaint, Crenshaw alleges the following as the basis for her action under Title VII:

> I have been sexually harassed by defended [sic] on numerous occasions; because of none [sic] compliance to sexual advances I have been retaliated against with none [sic] promotion and pay raises.

*See* Complaint ¶ 12(f). In her charge filed with the Equal Employment Opportunity Commission ("EEOC"), Crenshaw stated that she felt that she was discriminated against and retaliated against in that a) she was paid less than male cashiers, b) she was subjected to sexual harassment by male co-workers, and c) she was suspended and involuntarily transferred in retaliation for her complaints about sexual harassment. *See* EEOC Charge, Defendant's Exh. 9. We note these allegations because, in her response to Delray's motion for summary judgment, Crenshaw has apparently abandoned her retaliation claim and instead asserted that she was treated differently simply because she was a woman (and not in retaliation for her actions). Crenshaw's arguments in section B of her brief begin with the following: "Delray also discriminated against Crenshaw by

paying her less than other male meat workers ..., by condoning a practice of males using the women's washroom ..., and by handling disciplinary matters of men and women differently." *See* Crenshaw's Response at 13. Nowhere in her brief does Crenshaw argue that these actions were taken in retaliation for her reporting the alleged sexual harassment she was enduring. Even though Crenshaw has failed to pursue this claim on summary judgment, we will nonetheless examine the undisputed facts of the case to determine whether the retaliation claim would fail as a matter of law. *See Nabozny v. Podlesny*, 92 F.3d 446, 457 n. 9 (7th Cir.1996)(district court must examine facts to determine if granting defendants summary judgment on claim left unpursued by plaintiff is appropriate as a matter of law).

As another preliminary matter, we note that most of the incidents of harassment alleged by Crenshaw should not be considered by us in deciding this motion as they were not included in her charge of discrimination filed with the Equal Employment Opportunity Commission. As a general rule, a plaintiff under Title VII "cannot bring claims in a lawsuit that were not included in [the] EEOC charge." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994), citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). This rule, however, is not without some leeway. A plaintiff does not need to allege in the EEOC charge "each and every fact that combines to form the basis of each claim in [the] complaint." *Cheek*, 31 F.3d at 500, citing *Taylor v. Western and Southern Life Ins., Co.*, 966 F.2d 1188, 1195 (7th Cir.1992). Rather, an EEOC charge encompasses the claims in the complaint (or a reply to a summary judgment motion) if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek*, 31 F.3d at 500, quoting *Jenkins v. Blue Cross Mutual Hospital Ins. Inc.*, 538 F.2d 164, 167 (7th Cir.)(en banc), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976)(other citations omitted).

This test is satisfied if the allegations in the charge and the claims set forth by the

plaintiff have a reasonable relationship and the claims "can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek,* 31 F.3d at 500; *see also Harper v. Godfrey Co.,* 45 F.3d 143, 148 (7th Cir.1995). In this case, Crenshaw's EEOC charge was filed on January 18, 1996 and asserts that she had been discriminated against between August 1, 1995 and December 19, 1995. *See* Defendant's Exh. 9.[1] In her complaint, Crenshaw asserts that she received a right-to-sue letter from the EEOC on May 31, 1996. *Id.* There is no indication of any other charge having been filed with the EEOC or of Crenshaw having received any other right–to–sue letter from the EEOC regarding events after December 19, 1995. As such, any events which took place after December 19, 1995 were not alleged in her EEOC charge, and any investigation by the EEOC would not have focused on, or likely turned up, these events. Accordingly, any acts which took place after December 19, 1995 were not covered by Crenshaw's charge or right-to-sue letter and we should not address them at this time. However, Delray does not raise this argument in its brief, and as we noted the original complaint is currently missing from the Clerk's file. Therefore, we will consider all of the incidents alleged by Crenshaw in making our decision, since we must take the asserted facts in a light most favorable to the non-moving party.

With these matters resolved, we move to a discussion of the merits of the present motion.

## I. Hostile Work Environment

■ First, Crenshaw asserts that she was sexually harassed at work, thus creating a hostile work environment, in violation of Title VII. There is no indication that Crenshaw is attempting to prove her case via the direct method; as such, we will proceed in our analysis using the *McDonnell Douglas* framework. First, as discussed above, Crenshaw must establish a prima facie case. To establish a prima facie case for hostile work

environment sexual harassment, a plaintiff must show: (1) that she was a member of a protected class; (2) that she was subjected to unwelcome verbal or physical conduct of a sexual nature; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment; and (5) that the employer knew or should have known of the harassment and unreasonably failed to take appropriate corrective action. *Swanson v. Elmhurst Chrysler Plymouth, Inc.,* 882 F.2d 1235, 1238 (7th Cir.1989), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990)(setting forth first four elements); *Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465 (7th Cir.1990)(providing this formulation of fifth element). *See also Caviness v. Nucor–Yamato Steel Co.,* 105 F.3d 1216, 1222 (8th Cir.1997). Because we find that Crenshaw has failed to prove a prima facie case, her claim fails as a matter of law.

There is apparently no argument by Delray that Crenshaw has established the first three elements of her prima facie case, and we find that she has. As a woman, Crenshaw is a member of a protected class. The undisputed evidence also shows that she was subjected to unwelcome verbal and physical contact of a sexual nature, and that the harassment was based on Crenshaw's sex. Delray argues, however, that Crenshaw has failed to present evidence supporting the fourth and fifth elements of her case. We will discuss each of these elements in turn below.

First, Crenshaw must have established that the harassment she endured was severe and pervasive and altered her conditions of employment. When assessing whether allegedly sexually harassing conduct was sufficiently severe to alter the terms or conditions of the plaintiff's employment, we must evaluate the situation from both an objective and a subjective perspective. *Rennie v. Dalton,* 3 F.3d 1100, 1107 (7th Cir.1993), *cert, denied,* 510 U.S. 1111, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994). Thus, the plaintiff must establish

---

1. We note that reference must be made to the copy of Crenshaw's complaint and EEOC letter contained in the defendant's exhibits because they are currently missing from the file in the Clerk's office.

"that *she* was adversely affected by the conduct and that a *reasonable* person would also have been adversely affected." *Id.* However, isolated instances of inappropriate conduct do not constitute sexual harassment; "the offensive conduct must be persistent." *Id.,* quoting *Downes v. F.A.A.,* 775 F.2d 288, 293 (Fed.Cir.1985). Delray argues that the alleged instances of harassment against Crenshaw were not persistent and do not constitute sexual harassment for purposes of Title VII; Crenshaw, on the other hand, alleges that they are sufficient. However, we will not examine this conflict in depth because we find that even if Crenshaw had established that the alleged conduct was severe enough to have changed the conditions of her employment, Delray appropriately dealt with the alleged offenders and Crenshaw cannot prove the fifth element of her prima facie case.

For the final element of her case, Crenshaw must prove that Delray knew of or should have known about the alleged harassment and failed to take appropriate corrective action. It is established that the standard applicable to the liability of employers for the acts of its employees in the sexual harassment context "closely resembles the 'fellow servant' rule." *Guess,* 913 F.2d at 465. As such, the employer,

> provided it has used due care in hiring the offending employee in the first place, is liable for that employee's torts against a coworker only if, knowing or having reason to know of the misconduct, the employer unreasonably fails to take appropriate corrective action.

*Id.* For these purposes, an employer acts unreasonably if it delays unduly in acting or if the action it does take, no matter how promptly, is not reasonably likely to prevent the misconduct from occurring. *Id.* Because we find that Crenshaw has failed to prove that Delray failed to take appropriate action in this case, her hostile work environment claim fails as a matter of law.

As a preliminary matter, we note that Crenshaw did not complain to anyone in management at Delray about the alleged incidents with Carroll, Guerin, or Delaney. Since an employer's liability hinges on its failure to address acts which it knows of or should have known of, Crenshaw has no basis to allege that Delray knew of these incidents and failed to respond appropriately to them. Management was not alerted by Crenshaw to these acts, and it did not have actual knowledge of their occurrence. Further, Crenshaw does not present any evidence which indicates that Carroll, Guerin, or Delaney had previously sexually harassed any other female employee, and there is no evidence to show that Delray should have known that these men presented a risk. Since Delray did not know of these acts because Crenshaw failed to report them, Delray cannot be charged with failing to appropriately respond to them. *See, e.g., Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 446 (7th Cir.1994)("It would be unrealistic to expect management to be aware of every impropriety committed by every low-level employee.")

With regard to the other incidents, the evidence shows that Delray did promptly address these incidents in a manner "reasonably calculated to prevent further harassment under the facts and circumstances of the case at the time the allegations [were] made," *McKenzie v. Illinois Department of Transportation,* 92 F.3d 473, 480 (7th Cir. 1996), quoting *Brooms v. Regal Tube Co.,* 881 F.2d 412, 421 (7th Cir.1989), and Crenshaw's claim must fail. With respect to the Altman incidents, Crenshaw complained to her supervisor after the first incident, and he paged Altman to come to his office. Crenshaw stated that she believed that this straightened everything out, and she did not object to his coming into the lunchroom when she was in there the next week. *See* 12(M) Statement ¶ 38. When Altman subsequently made inappropriate remarks to Crenshaw in the lunchroom, she did not report it to a supervisor, and Delray had no reason to know of the occurrence of this incident. Finally, after the last incident with Altman and Crenshaw's husband, Crenshaw reported Altman's conduct to her supervisor and Altman was transferred to another store. The evidence shows that this action ended her harassment by Altman, the intended object of the discipline. *See* 12(M) Statement ¶ 56. This clearly establishes that Delray acted

reasonably with respect to Altman; when a discussion did not stop his actions, it promptly transferred him to another store. This action was manifestly reasonable under the circumstances, and Crenshaw cannot claim that Delray was deficient with respect to Altman.

With respect to the Aeyers incident, Crenshaw reported his actions to a manager who immediately called Aeyers into his office. Crenshaw was not harassed at any future time by Aeyers, and she admitted that she felt that Delray had "properly and quickly addressed her complaint about Aeyers." *See* 12(M) Statement ¶¶ 69–70. This action on the part of Delray was also appropriate and reasonable, given the fact that it immediately ended Aeyer's harassment of Crenshaw. Crenshaw cannot show that Delray acted unreasonably in this circumstance.

Finally, with regard to Porter, Delray's actions were also reasonable under the circumstances. It did take three warnings by management to end his harassment, but in the context of the situation Delray did not act inappropriately. The evidence shows that all of Porter's harassing acts occurred within a two-week period. There is no evidence that Delray should have been aware after the first incident that a warning and reprimand would not sufficiently deter Porter, and that response was appropriate. The next two incidents occurred within close proximity, and the end result of Porter's being reprimanded was that the conduct stopped. Given that the incidents occurred so closely in time to one another and stopped after Porter's third reprimand, Delray's actions were reasonable under the circumstances as well.

Thus, Delray appropriately addressed all of the incidents of which it was aware, and Crenshaw cannot establish the fifth element of her prima facie case. As such, her hostile environment claim fails as a matter of law, and we grant Delray summary judgment on it. We also wish to briefly address Crenshaw's argument that Delray should have known that she would be harassed by all of these various employees and taken steps to prevent it. In support of this argument, Crenshaw cites *Valadez v. Uncle Julio's of*

*Illinois, Inc.*, 895 F.Supp. 1008 (N.D.Ill. 1995). However, *Valadez* is not analogous to this case, since there two waitresses testified that the allegedly harassing employee had made the same sexually related comments to them as to the plaintiff and that they had seen him make such comments to others. *Id.* at 1015. No evidence was presented here, however, to show that any of the people who allegedly harassed Crenshaw had harassed anyone before. In the absence of such evidence, there is no genuine issue of fact as to whether Delray should have known about the harassment, and for the reasons set forth above Crenshaw's claim is fatally lacking.

## II. Retaliation

█ As noted above, Crenshaw included a claim of retaliation in both her EEOC charge and her complaint, but did not present any arguments regarding such a claim in her response to Delray's motion for summary judgment. However, as also noted above, we must nevertheless examine this claim in light of the facts presented by the parties to determine if summary judgment is appropriate. In order to have presented a prima facie claim for retaliation, Crenshaw must have set forth facts showing that 1) she engaged in statutorily protected expression, 2) she suffered an adverse action by Delray, and 3) there is a causal connection between the protected expression and the adverse action. *Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir.1992), citing *Holland v. Jefferson National Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir.1989). We find that the evidence does not establish a causal link between any protected conducted on the part of Crenshaw and the ending of her employment at Delray, and this claim fails as a matter of law.

The record does establish that Crenshaw complained about harassment by co-workers, a protected activity under Title VII. *See* 42 U.S.C. § 2000e–3 (prohibiting employers from discriminating against employees who oppose unlawful employment practices). It also established, through Delray's own admissions, that Crenshaw was disciplined on seven separate occasions during her tenure with Delray. *See* 12(M) Statement ¶ 114.

However, there is a complete dearth of evidence showing any causal link between the disciplinary actions against Crenshaw and her protected activities, and this claim fails as a matter of law. Crenshaw does not set forth any facts from which even an inference could be drawn that she was disciplined because she complained to her managers and supervisors about her co-workers' sexually harassing behavior. An examination of Delray's Exhibit 9 shows that Crenshaw repeatedly came to work late, left early, or did not show up at all, thus prompting many of the disciplinary actions against her. Crenshaw offered no evidence to the contrary to connect these actions with her protected activity, and her claim must fail. Since Crenshaw has not met her burden of proof on her retaliation claim, we grant Delray summary judgment on it.

### III. Sex Discrimination

Finally, Crenshaw presents a claim of sex discrimination, alleging in her response to the motion for summary judgment that Delray discriminated against her: 1) "by paying her less than other [sic] male meat workers"; 2) "by condoning a practice of males using the women's washroom"; and 3) "by handling disciplinary matters of men and women differently." *See* Crenshaw's Response at 13. As noted above, Crenshaw is apparently proceeding under the indirect method of proof in this case. Thereunder, a plaintiff alleging sex discrimination must set forth a prima facie case by proving 1) she belongs to a protected class, 2) she performed her job satisfactorily, 3) she suffered an adverse employment action, and 4) the employer treated a similarly-situated male employee more favorably. *Greenslade v. Chicago Sun–Times, Inc.*, 112 F.3d 853, 863 (7th Cir.1997), citing *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. at 1824–25. Because we find that these allegations are either barred from our consideration or that Crenshaw has not set out a prima facie case, we grant Delray summary judgment on Crenshaw's sex discrimination claims.

### A. Unequal Pay

■ First, Crenshaw alleges that she was discriminated against in that Delray paid male workers in the meat department more than it paid her. She also asserts that she was promised a raise by her supervisor, Mike Guerin, for transferring to the meat department but that she never received it. With regard to the first claim, there is no objective evidence to support Crenshaw's assertions, but only her subjective opinion that she was paid less. The undisputed facts establish that Crenshaw was unable, at her deposition, to offer any testimony regarding if, when, and in what amounts any other employees received raises. *See* 12(M) Statement ¶ 111. Crenshaw did cash other employees' checks as part of her duties as a cashier (*see* 12(N) Statement ¶ 54), but she admitted that she did not know any salary or raise information about other employees except for what she saw on their checks. *See* Plaintiff's Exh. A at 321 lines 9–12. Outside of this opinion, Crenshaw has not provided the court with any tangible evidence (such as payroll records or testimony from other employees) establishing that she did not receive a raise while other employees did, and she cannot establish that she suffered what amounts to an adverse employment action. Failing to present this element of her prima facie case, her claim fails as a matter of law.

Furthermore, Crenshaw has provided no evidence that any of the employees to whom she is comparing herself were "similarly situated" to her, and she also fails to establish the fourth element of her case. Crenshaw has failed to meet her burden on this motion for summary judgment, and this claim must fail. With regard to Crenshaw's claims that she did not receive a raise that she was promised by Guerin, the uncontested evidence establishes that employees at Delray were not guaranteed raises. *See* 12(M) Statement ¶ 13. This evidence rebuts any assertion by Crenshaw that she was entitled to a raise, and she cannot show that she suffered an adverse employment action. In addition, Crenshaw has provided no evidence which shows that her failure to get this "promised" raise was in some way due to the fact that she was a woman, and she cannot show that she was discriminated against because of her sex. Thus, in sum, Crenshaw has failed to provide evidence in support of

her claim that women were paid less than men, and it fails as a matter of law.

### B. Washroom Policy

■ Next, Crenshaw asserts that Delray engaged in sex discrimination because it allowed men to use the women's restroom and allowed them to open the door when it was locked and a woman was inside. This claim is not contained in her complaint, however, and was not included in her EEOC charge, and we cannot entertain it at this time. As discussed above, a plaintiff under Title VII is barred from raising claims in court which were not contained in or which would not logically flow from the allegations contained in her EEOC charge. In her charge, Crenshaw included allegations about being sexually harassed by co-workers, about being paid less than male employees, and about being transferred because she complained about the sexual harassment. There are no allegations regarding Delray's condoning the use of the women's restroom by men, and the EEOC cannot reasonably have been expected to have investigated such a claim based on the information Crenshaw included in her charge. Therefore, Crenshaw's claim that she was subjected to sex harassment because of Delray's bathroom policies was not presented in her EEOC charge and did not fairly grow out of her allegations contained therein, and she cannot present such a claim at this stage of the proceedings. This claim fails as a matter of law, and we grant Delray summary judgment on it.

### C. Disparate Disciplinary Actions

■ Finally, Crenshaw alleges that she was subjected to harassment in that Delray handled disciplinary matters differently for women than it did for men. The only enlightenment we are given with regard to the basis of this claim is an assertion in Crenshaw's response brief that "men were paged to the office and spoken to in confidence" while "[w]hen management spoke to Crenshaw in August, 1996 ... they did so in the parking lot." *See* Crenshaw's Response at 14. Furthermore, management did not simply speak to Crenshaw, but rather "four male managers surrounded Crenshaw like a gang,

yelled at her, and made her feel like an idiot." *Id.* This assertion fails for several reasons.

First, Title VII does not provide a cause of action for hurt feelings, even if an employer's actions make one "feel like an idiot." Absent evidence showing that the action had a discriminatory basis, there is no Title VII violation. Second, the undisputed evidence does not support Crenshaw's allegations. The evidence in this case shows that Crenshaw was not disciplined on the night in question, but rather was spoken to about her missing work to take care of her sick child. The evidence also shows that Crenshaw was actually disciplined seven other times, primarily for being tardy, leaving work early, or not showing up for work. Several of her written reprimands are signed by Crenshaw herself and indicate that she was given an oral warning. *See* Defendant's Exh. 9. Crenshaw does not provide evidence that any improper actions took place during these other disciplinary proceedings, and she has not met her burden in this case. There is no basis for us to find that Crenshaw's disciplinary matters were handled in a different manner than male employees', and her claim fails.

Thus, in summary, Crenshaw has provided no support for her claims of sex discrimination, and she is barred from presenting one of them, and we grant Delray's motion for summary judgment on these claims.

### CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is granted.