Gregory HARPER, et al.,
Plaintiffs–Appellants,

v.

GODFREY COMPANY and D.B. Barcom, Incorporated, Defendants–Appellees.

No. 93–4016.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1994.

Decided Jan. 10, 1995.

Rehearing Denied Feb. 27, 1995.

Mark J. Rogers (argued), Angermeier & Rogers, Milwaukee, WI, for plaintiffs-appellants.

Paul E. Prentiss (argued), Michael, Best & Friedrich, Milwaukee, WI, for defendants-appellees.

Before GODBOLD,[*] FLAUM, and ROVNER, Circuit Judges.

GODBOLD, Circuit Judge.

Plaintiffs claim that: (1) their employment placed them on a discriminatorily ordered seniority list with Caucasians at the top of the list and African–Americans at the bottom, and (2) they were discriminatorily laid off. The district court held that plaintiffs were barred from bringing their seniority list claim under Title VII, 42 U.S.C. §§ 2000e *et seq.*, since it was not a charge in their EEOC complaints; that the seniority list claim failed under 42 U.S.C. § 1981 pursuant to *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); and that race was the determinative factor in deciding who was to be laid off. 839 F.Supp. 583. We affirm in part and reverse in part.

## BACKGROUND

This case has its genesis in a labor strike that took place at the warehouse of Godfrey Company in Waukesha, Wisconsin, during the summer of 1985. Godfrey is a wholesale food distributor and retailer that supplies food for stores located throughout Wisconsin. In anticipation of a strike by the regular warehousemen and drivers Godfrey began hiring and training strike replacements who were recruited from an employment agency and advertisements in local newspapers. This recruiting method, which varied from Godfrey's usual method of recruitment, resulted in a work force with a much higher percentage of African–Americans (possibly in excess of 50%) than the pre-strike method.[1] Plaintiffs Gregory Harper, Alonzo Webber, and Steven Wright were all hired at this time.

---

[*] The Honorable John C. Godbold, Senior Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, is sitting by designation.

1. Prior to the strike the warehouse employed approximately 650 workers, of whom roughly 3.5% were minorities. R. 95 at 2.

The strike began in June 1985 and lasted for six weeks. The situation was chaotic with 150–200 replacements hired and trained during the course of the strike. Striking workers engaged in violence, ranging from verbal harassment to death threats and a shot being fired at a worker.

The strike ended in mid-August, and a hierarchy of workers was created. Regular full-time employees were at the top; the previously striking workers comprised this group. Part-time workers, called "casuals," comprised the second tier. Casuals substituted for vacationing or ill regular employees and supplemented the manpower of the regular employees. Additionally, casuals were hired as new regular employees were needed. Godfrey recruited the original casuals from the group of strike replacements remaining at the end of the strike. These casual employees represented the best of the strike replacements based on knowledge, performance, and attendance. Plaintiffs were among the strike replacements selected as casuals.

Godfrey employed plaintiffs for approximately two years before they were discharged. Plaintiffs do not contest their discharges. Rather they assert that: (1) the casual seniority list, by which casuals were hired as regular employees, was ordered discriminatorily so that African–American casuals were on the bottom half of the list; and (2) a "layoff" period of approximately 12 weeks in early 1986 discriminated against them on the basis of their race. Their claims were advanced pursuant to § 1981 and Title VII.

The district court issued a pre-trial order which effectively eliminated plaintiffs' § 1981 claims. The remainder of the case proceeded to trial, and the court found for plaintiffs on their layoff claim and against plaintiffs on their casual seniority list claim under Title

VII. Judgment for plaintiffs was entered, and they appealed.

## DISCUSSION

### I. Seniority List Claim

#### A. 42 U.S.C. § 1981

■ Following a motion to reconsider the denial of defendants' motion for partial summary judgment,[2] the district court found that plaintiffs failed to state a claim under § 1981 because they failed to prove that moving from the casual seniority list to regular employee status would be a promotion under the test in *Patterson*, 491 U.S. 164, 109 S.Ct. 2363. We review the district court's decision *de novo* and hold that this question must be submitted to a jury.

■ The Supreme Court laid out the original test in *Patterson*: "Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id.* at 185, 109 S.Ct. at 2377.[3] Finding this language difficult to apply, the Seventh Circuit has further developed the test. Through the last five years the court has produced three tests: the contract test, the outsider test, and the job requirements test. The contract test focuses on whether the alleged promotion would alter the contractual relationship between the employee and employer. *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311 (7th Cir.1989). *See also Mozee v. American Commercial Marine Serv. Co.*, 940 F.2d 1036, 1055 (7th Cir.1991) (determining that the promotions in that case would not create new and distinct relationships), *cert. denied*, —— U.S. ——, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992). The outsider test accounts for the occasional fact situation in which a stranger could sue a company under § 1981 if he was denied a position on racial grounds but an employee of the same

**2.** This case originally was assigned to District Judge J.P. Stadtmueller, who denied defendants' motion for partial summary judgment on the § 1981 failure to promote claim. The case then was reassigned to District Judge Rudolph Randa, who examined defendants' motion for reconsideration and sat as judge for the remainder of the case.

**3.** Whether an alleged promotion rises to the level of "a new and distinct relationship" is a question of fact. *Von Zuckerstein v. Argonne Nat'l Lab.*, 760 F.Supp. 1310, 1315 (N.D.Ill.1991) (citing *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311–12 (7th Cir.1989); *Cousins v. American President Lines, Ltd.*, No. 90 C 1145, 1990 WL 70324 (N.D.Ill. May 16, 1990)).

company could not sue even if his application for the position was denied on the same grounds. *Malhotra*, 885 F.2d at 1311. The job requirements test looks to see whether there was a substantial change in the employee's job duties and responsibilities. *Id.* at 1317 n. 6 (J. Cudahy concurring). The court also has emphasized the requirement of a qualitative change in the relationship, *Taylor v. Western & S. Life Ins. Co.*, 966 F.2d 1188, 1201 (7th Cir.1992), and, in a few cases, has specified facts that would or would not be classified as a promotion, *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1473 (7th Cir.) ("neither an increase in pay alone ... nor a simple change in status involving no additional responsibilities ... constitutes a new and distinct relation....") (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993); *Partee v. Metropolitan Sch. Dist. of Wash. Township*, 954 F.2d 454, 457 (7th Cir.1992) (assuming supervisory duties plus other factors might create a new employer-employee relationship); *Luddington v. Indiana Bell Telephone Co.*, 796 F.Supp. 1550, 1560 (S.D.Ind.1990) ("[A]n employee must assume responsibilities that are distinctly different from the previous job, along with an increase in the level of the job."), *aff'd on other grounds*, 966 F.2d 225 (7th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994).

█ The district court (J. Randa) applied the outsider test and the job requirements test, reasoning that the Seventh Circuit has moved away from the original contract test. R. 94 at 8–10. To the contrary, we hold that the contract test is alive and well in the Seventh Circuit, as are the outsider test and the job requirements test. *See, e.g., Mojica v. Gannett Co.*, 7 F.3d 552, 560 (7th Cir.1993) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 1643, 128 L.Ed.2d 363 (1994); *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir.1993); *Partee*, 954 F.2d at 457. The outsider test does not apply to the facts of the instant case since only those persons on the casual seniority list were eligible for promotion to regular employee status. Under the contract test and the job requirements test, plaintiffs presented enough evidence of the changes a promotion would entail to present a disputed material issue that

survived defendants' motion for partial summary judgment.

Upon the first consideration of this issue the district court (J. Stadtmueller) found that "elevation from casual to regular employee involves a new and distinct relation between employer and employee." R. 43 at 13. The court considered many factors in reaching its decision. It noted that casual employees could be terminated at will, while regular employees could be terminated only for cause and also had review procedures available to them. The regular employees earned contractual seniority rights that casual employees did not earn. Regular employees earned better salaries and enjoyed fringe benefits that the casuals did not. *Id.* at 12–13. These considerations most easily fit under the contract test.

When the district court (J. Randa) reconsidered the issue it primarily focused on factors that would fall within the confines of the job requirements test. The court noted that "the only qualification for becoming a regular employee was being the next in line on the casual seniority list when a position became available." R. 94 at 10. The court continued, stating that casual employees who had earned regular employee status often performed the same jobs in the same departments and for the same supervisor. Such an employee did not gain any supervisory responsibilities, his wage remained an hourly wage, and he stayed within the same collective bargaining unit. *Id.*

In the final analysis it appears that the promotion from casual to regular employee does not survive *Patterson* using the job requirements test. However, application of the contract test and the evidence of increased job security, seniority rights, better salary, and more fringe benefits present disputed material issues of fact that require submission to a jury.

### B. *Title VII*

█ Generally a plaintiff may not bring claims under Title VII that were not originally brought among the charges made to the

EEOC.[4] This rule serves two purposes: affording an opportunity for the EEOC to settle the dispute between the employee and employer and putting the employer on notice of the charges against it. *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992). However, the Seventh Circuit has allowed claims in a plaintiff's complaint that are "like or reasonably related" to the EEOC charges and that reasonably can be expected to grow out of an EEOC investigation of the charges. *Id.* at 1111. *See also Cheek,* 31 F.3d at 500; *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir. 1976) (en banc), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). Despite the liberality afforded Title VII plaintiffs the district court dismissed plaintiffs' seniority list claims under Title VII. R. 95 at 20–23 (citing *Witherspoon v. Roadway Express, Inc.,* 782 F.Supp. 567 (D.Kan.1992)).[5] We affirm the district court's dismissal of plaintiffs' seniority list claim under Title VII but do so on other grounds.

█ To include a discrimination claim in a federal district court complaint that was not brought in the charges filed with the EEOC a plaintiff must pass the two prong test of *Jenkins:* (1) the claim is like or reasonably related to the EEOC charges, and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges. 538 F.2d at 167. The district court found that the seniority list claim reasonably could have grown out of the allegations made in the EEOC charges by plaintiffs regarding their layoffs, R. 95 at 20 (Conclusions of Law 2), and we will not disturb that finding. However, the district

court did not analyze the claim under the first prong of the test.

"The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals.*" *Cheek,* 31 F.3d at 501 (emphasis in original). *See also Malhotra,* 885 F.2d at 1312 (time period is another factor). All three plaintiffs claimed in their EEOC charges that Godfrey discriminated only with respect to their layoffs. The layoffs were not connected with the ordering of the seniority list. Nor were the same individuals involved; Jim LeClaire prepared the seniority list, while Ed Urban laid off plaintiffs. Furthermore, the ordering of the seniority list took place in August 1985 whereas the layoffs took place early in 1986. Since the seniority list claim in plaintiffs' complaint is not reasonably related to the layoff claim in their EEOC charges, we hold that the seniority list claim pursuant to Title VII was properly dismissed.

## II. Layoff Claim

The district court found that plaintiffs were discriminatorily laid off. However, the court limited the damages available to plaintiffs because it gave collateral estoppel effect to a state agency's decision that plaintiffs were justifiably discharged. R. 94 at 18. Plaintiffs contest the limitations placed on their damages.[6]

### A. Collateral Estoppel

█ When plaintiffs were discharged they each filed for unemployment benefits.

---

4. This is a condition precedent that Title VII plaintiffs must satisfy. *Cheek v. Western & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994) (citing *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 864 (7th Cir.1985)).

5. *Witherspoon* created an exception to the general premise that any claim that is like or reasonably related to the charges made by a plaintiff in his EEOC grievance and that could grow out of the EEOC charges may be brought in the plaintiff's complaint. "[I]n those situations where an individual attempts to bring a federal court action for a discriminatory act not reported to the EEOC that occurred *prior* to a discriminatory act reported to and investigated by the EEOC, such

claim should be barred for failure to exhaust administrative remedies." 782 F.Supp. at 572 (emphasis in original). Applying the *Witherspoon* exception, the district court stated that plaintiffs had at least constructive knowledge of the racial imbalance in the ordering of the seniority list, R. 95 at 23, and because the seniority list was created prior to the layoffs, plaintiffs could not bring their seniority list claim.

6. The plaintiffs also assert that the district court erred in its decision to not award damages for a four-week period during which the plaintiffs did not work because the court found that the plaintiffs themselves delayed returning to work. The district court's finding is not clearly erroneous.

Plaintiffs did not claim at the time, nor have they claimed at any time since, that the discharges were discriminatorily motivated. R. 94 at 11. Godfrey protested, contending that Harper, Webber, and Wright were all fired for good cause. The Unemployment Compensation Division (UCD) held hearings and determined that plaintiffs were all properly discharged and thus ineligible for benefits. Plaintiffs did not appeal the agency decision to state court. *Id.* at 11–12. The district court gave collateral estoppel effect to the UCD's determination that plaintiffs were all discharged for just cause.

 Section 1738 mandates that federal courts give full faith and credit to state court decisions to the same degree that the decisions would have in the courts of that state. 28 U.S.C. § 1738. Title VII permits plaintiffs to pursue their claims in federal court *de novo* after they have pursued their claims in state proceedings. *University of Tenn. v. Elliott,* 478 U.S. 788, 795–96, 106 S.Ct. 3220, 3224–25, 92 L.Ed.2d 635 (1986). Reconciling these two principles, the Supreme Court has held that a state agency decision that has been reviewed by a state court will receive from a federal court the same collateral estoppel effect that the decision would receive in that state, *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 468–70, 102 S.Ct. 1883, 1890–92, 72 L.Ed.2d 262 (1982), while an unreviewed state agency decision will not receive collateral estoppel effect, *Elliott,* 478 U.S. at 796, 106 S.Ct. at 3225.

*Elliott,* however, does not apply to the present case. The agency decision here was made by an unemployment benefits agency, not an employment discrimination agency. The issue involved was the reason for plaintiffs' discharges, which were not alleged to have been discriminatory. Plaintiffs' justifiable discharges have only an indirect effect on the damages available in their Title VII claims; the decision does not directly affect their discrimination allegations. *See also Gear v. Des Moines,* 514 F.Supp. 1218 (S.D.Iowa 1981) (in a § 1983 action, the court gave collateral estoppel effect to an unemployment agency's finding that the plaintiff had left her employer voluntarily without good cause). Therefore, the UCD decision regarding the reasons for plaintiffs' terminations must receive collateral estoppel effect in federal court.

#### B. Damages

 One purpose of Title VII is to put a plaintiff in the same position he/she would have been in had the discrimination not occurred, not in a better position. Regardless of whether the discrimination had occurred plaintiffs would have been fired in early 1987 for their misconduct. Accordingly, the district court correctly restricted their awards of back pay to the time preceding termination and disallowed their reinstatements. *See Bohen v. East Chicago,* 622 F.Supp. 1234 (N.D.Ind.1985), *aff'd in part, rev'd in part on other grounds,* 799 F.2d 1180 (7th Cir.1986) (employee, discharged for cause, not entitled to back pay or reinstatement).

### CONCLUSION

The judgment is AFFIRMED insofar as it denies recovery under Title VII and denies damages for the layoffs, and it is REVERSED and REMANDED insofar as it denies recovery under § 1981.