Bonnie J. DIRKS, Plaintiff,

v.

The J.C. ROBINSON SEED
CO., Defendant.

No. 97–3017–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Oct. 18, 1997.

Jean M. Baker, West Des Moines, IA, for Plaintiff.

Sandra L. Dougherty, Lieben, Dahlk, Whitted, Houghton, Slowiaczek & Jahn, P.C., Omaha, NE, Thomas M. Cunningham, Shearer, Templer & Pingel, P.C., West Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING MOTION FOR PARTIAL SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ....................... 1304

II. STANDARDS FOR SUMMARY JUDGMENT .......................... 1305

III. FINDINGS OF FACT ............... 1307

IV. LEGAL ANALYSIS ................ 1309
   A. Exhaustion Of Administrative Remedies................... 1309
   B. Claims Raised In Dirks' Administrative Complaint............ 1310
   C. Consideration Of Claims Not Raised In Administrative Complaint ...................... 1312

V. CONCLUSION .................... 1314

In this employment discrimination litigation, defendant has moved for partial summary judgment on the ground that plaintiff has not exhausted administrative remedies on her claim that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by engaging in sex discrimination in the form of wage disparity. Plaintiff contends that she did, although inartfully, submit a claim of sex discrimination to the investigating state agency and that, even if she did not, the court may nonetheless consider her sex discrimination claim in this litigation because her claim of sex discrimination is reasonably within the scope of her claim before the state agency.

## I. INTRODUCTION AND BACKGROUND

Plaintiff Bonnie J. Dirks filed this age and sex discrimination lawsuit on February 26, 1997, against her former employer, the J.C. Robinson Seed Co. ("J.C. Robinson"). Dirks had been employed at J.C. Robinson from July, 1989 to August 19, 1993, when her employment was terminated. At the time of her termination, Dirks was employed as a

secretary for J.C. Robinson's plant in Belmond, Iowa.

Dirks, who was sixty years of age at the time of the filing of the complaint in this case, alleges in her complaint that she was terminated because of her age. She also asserts that male secretaries at J.C. Robinson were paid a higher wage for performing the same job within the company. Specifically, in Count I, Dirks alleges that J.C. Robinson engaged in sex based wage discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Count II of Dirks' complaint alleges that age was a determining factor in her termination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*

J.C. Robinson has moved for summary judgment on Dirks' sex discrimination claim. In its motion, J.C. Robinson asserts that there are no genuine issues of material fact and argues that Dirks failed to exhaust her administrative remedies as to her claim of sex discrimination because no claim of sex discrimination was raised in her administrative claim before the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). Dirks filed a timely resistance to J.C. Robinson's motion. In her resistance, Dirks contends that while her initial charge with the Iowa Civil Rights Commission and the EEOC raised only the issue of age discrimination, she raised the issue of sex discrimination in a letter to the Iowa Civil Rights Commission. In the alternative, Dirks contends that even if she did not directly assert a charge of sex discrimination before the Iowa Civil Rights Commission, the court may nonetheless consider her sex discrimination claim here because her sex discrimination claim is reasonably within the scope of her charge before the Iowa Civil Rights Commission.

The court heard telephonic oral arguments on J.C. Robinson's Motion For Partial Summary Judgment on October 8, 1997. At the oral arguments, plaintiff Dirks was represented by counsel Jean M. Baker, West Des Moines, Iowa. Defendant J.C. Robinson was represented by counsel Sandra L. Dougherty of Lieben, Dahlk, Whitted, Houghton, Slowi-

aczek & Jahn, P.C., Omaha, Nebraska, and Thomas M. Cunningham of Shearer, Templer & Pingel, P.C., West Des Moines, Iowa.

The court turns first to the standards applicable to motions for summary judgment, then to a discussion of the undisputed facts as shown by the record and the parties' submissions, and finally to the legal analysis of whether J.C. Robinson is entitled to summary judgment on Dirks' sex discrimination claim.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co. v. Shenandoah S., Inc.,* 81 F.3d 789, 791 (8th Cir.1996); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir. 1993); *Woodsmith Publ'g Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing FED. R. CIV. P. 56(c)).[1] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Dirks, and give her the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Quick v. Donaldson Co.,* 90 F.3d 1372, 1377 (8th Cir.1996); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.,* 77 F.3d 1109, 1112 (8th Cir.1996); *Munz,* 28 F.3d at 796; *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,*

948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party, J.C. Robinson, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). J.C. Robinson is not required by *Rule* 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

■ "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Dirks is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Rabushka ex rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prods., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such

---

1. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison,* 28 F.3d at 66.

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Quick,* 90 F.3d at 1376–77; *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If Dirks fails to make a sufficient showing of an essential element of a claim with respect to which she has the burden of proof, then J.C. Robinson is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997); *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247.

The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimina-

tion cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir. 1990); *Hillebrand,* 827 F.2d at 364). Summary judgment is appropriate only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). The court reasoned that "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *Johnson,* 931 F.2d at 1244; *accord Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford,* 37 F.3d at 1341); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford,* 37 F.3d at 1341). However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)). With these standards in mind, the court turns to consideration of J.C. Robinson's Motion For Partial Summary Judgment.

### III. FINDINGS OF FACT

Plaintiff Bonnie J. Dirks was hired by defendant J.C. Robinson Seed Company in July 1989, as a secretary for its plant in Belmond, Iowa. Dirks was over fifty years old at the time she was hired by J.C. Robinson. Dirks was discharged by J.C. Robinson on August 19, 1993. On September 14, 1993, Dirks filed a complaint of discrimination with the Iowa Civil Rights Commission and the

EEOC.[2] In her complaint of discrimination, Dirks answered a question asking her for the basis of her claim of discrimination by checking the box next to age. She also listed her date of birth and age in answer to the question. Dirks further stated, as the particulars of her complaint, that:

I am 57 years old. I was employed as plant secretary since Sept. 11, 1966, the company was purchased in 1988 by J.C. Robinson Seed Co.

I believe my age (57) was a factor in the following incident (1) on 8–19–93 I was told by Ken L. Nielsen, Plant Manager, I was terminated because I said something wrong.

Administrative Comp. at 4.

In September 1993, J.C. Robinson received a copy of Dirks' complaint of discrimination. On October 1, 1993, Dirks wrote to the Iowa Civil Rights Commission regarding her complaint of discrimination. In her letter, Dirks explained in part that:

I would like to explain about the Belmond plant. I was the only woman employee working with 13 men, three of the men are older than myself and the others range in age from 21 to 43 years old.

Ex. 2–1. She then made the following observations regarding wages and raises in pay at J.C. Robinson:

I was told the first year of my employment that yearly raises are not given without job reviews. In the spring of 1990 all male employees were given their reviews, but I received none. When I approached Ken about this he said, "You don't need one, you are doing a good job and I have no problems with your job performance." If I recall correctly I received a 3% raise that year. I was paid $5.00 per hour when I started in July 1989 and had been increased to $5.63 per hour when I was terminated. All the male employees start at $6.00 per hour with a raise every 3

months at the end of their first year they are making approximately $10.00 per hour.

. . .

I asked for a raise on 2 different occasions and was denied both times. Ken was not at liberty to grant the raises to me without the permission of his boss, Steve Schmidt. Ken was upset when he couldn't grant me a raise saying he knew for a fact the person in Waterloo plant that was doing the same type of work at that particular time was drawing much more wages than I was, but of course he was a male.

Ex. 2–3.

In October 1993, J.C. Robinson received a Notice of Charge of Discrimination from the EEOC dated October 15, 1993, pertaining to Dirks' claim of discrimination. The EEOC's October 15, 1993, notice stated that the basis of the claim of discrimination was age.

On June 23, 1995, the Iowa Civil Rights Commission issued a decision in Dirks' complaint of discrimination in which it concluded that: **"No Probable Cause** exists to support the allegations of discrimination based on the Complainant's age." Attached to the Iowa Civil Rights Commission's decision was a copy of the Complaint Investigation Report dated June 21, 1995. The Complaint Investigation Report states that the incident under investigation is "Termination due to age." Ex. 3–2. The Complaint Investigation Report also states that age is the basis for the complaint. Ex. 3–2. After reviewing the investigation, the report contains the following recommendation:

The respondent in the corporate headquarters office did not approve of the complainant's office practice. Therefore this created a personality conflict. The complainant was terminated because she was not liked by the respondent corporate officer. Even though the complainant was a victim of poor office management, the termination would have occurred regardless because the complainant was not liked and the

---

**2.** The court notes that the standard form filed by Dirks with the Iowa Civil Right Commission is titled "Complaint Of Discrimination." This title is in keeping with Iowa Code § 216.15, which calls the document initially filed by a complainant with the Iowa Civil Rights Commission a "complaint." Title VII, however, refers to the document initially filed by a complainant alleging discriminatory actions as a "charge." 42 U.S.C. § 2000e–5(b). For the purposes of this order, the court will refer to the document as a complaint of discrimination.

respondent did not have the complainant's age or sex in mind at the time of termination. The complainant was replaced by another female.

Ex. 3–4.

On July 12, 1995, Dirks filed an application to reopen her complaint of discrimination before the Iowa Civil Rights Commission. In her application for reopening, Dirks states:

> After reviewing the investigative report I would like to change my claim basis to retaliation. At the time of filing, age was the basis I chose as after my first interview age seemed to be the reason for termination. I still feel this is an underlying factor. I truly didn't expect the company would admit to anything regarding age.

Application For Reopening at 1. The Iowa Civil Rights Commission denied Dirks' application for reopening on November 12, 1996. The decision denying Dirks' application for reopening states in relevant part:

> During the reconsideration, the materials previously submitted were reviewed and evaluated. Other relevant information was also considered. There is no evidence of unlawful discrimination under the Iowa Civil Rights Act. There is no evidence that the Complainant's age or sex was a factor in the decisions affecting his [sic] employment.
>
> It appears that the Complainant's discharge and the Respondent's actions leading up to her discharge were based on factors other than her age or her sex. It may well be the Complainant's discharge was unfair. However, there is no evidence to indicate that the Complainant was the victim of unlawful discrimination. Without such evidence, there is no reason for reopening.

Order Denying Reopening Application at 1. On November 25, 1996, the EEOC dismissed Dirks' discrimination charge.

### IV. LEGAL ANALYSIS

#### A. Exhaustion Of Administrative Remedies

■ Under Title VII, a discrimination charge must be timely filed with the EEOC before the initiation of a civil action under that statute. 42 U.S.C. § 2000e–5(e)(1); *see E.E.O.C. v. Commercial Office Prods. Co.,* 486 U.S. 107, 110–12, 108 S.Ct. 1666, 1668–70, 100 L.Ed.2d 96 (1988); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *Hanenburg v. Principal Mut. Life Ins. Co.,* 118 F.3d 570, 573 (8th Cir.1997); *Shannon v. Ford Motor Co.,* 72 F.3d 678, 684 (8th Cir. 1996); *Worthington v. Union Pac. R.R.,* 948 F.2d 477, 479 (8th Cir.1991); *Chaffin v. Rheem Mfg. Co.,* 904 F.2d 1269, 1271 (8th Cir.1990). It is generally recognized that " '[e]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.' " *Shannon,* 72 F.3d at 684 (quoting *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir.1994)); *see Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982). An employer must be given an opportunity to resolve an employee's complaints through voluntary compliance or conciliation before the employee may resort to the courts. *See E.E.O.C. v. Johnson & Higgins, Inc.,* 91 F.3d 1529, 1534 (2d Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 47, —— L.Ed.2d —— (1997); *McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498, 504 (1st Cir. 1996); *Romain v. Kurek,* 836 F.2d 241, 245 (6th Cir.1987); *Eatmon v. Bristol Steel & Iron Works, Inc.,* 769 F.2d 1503, 1509 (11th Cir.1985). As the United States Supreme Court noted in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989):

> In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of racial discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation.

*Patterson,* 491 U.S. at 180–81, 109 S.Ct. at 2374–75 (citing 42 U.S.C. § 2000e–5(b)).

█ Where an EEOC charge has been filed, a plaintiff exhausts his or her administrative remedies as to "the allegations of the judicial complaint [that are] like or reasonably related to the administrative charges that were timely brought." *Boge v. Ringland–Johnson–Crowley Co.,* 976 F.2d 448, 451 (8th Cir.1992); *accord Oates v. Discovery Zone,* 116 F.3d 1161, 1168 n. 7 (7th Cir.1997); *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 799 (10th Cir.1997), *petition for cert. filed,* (U.S. Aug. 10, 1997) (No. 97–5642); *Yamaguchi v. United States Dep't of Air Force,* 109 F.3d 1475, 1480 (9th Cir.1997); *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir.1996); *McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 481 (7th Cir.1996); *Shannon,* 72 F.3d at 684; *Harper v. Godfrey Co.,* 45 F.3d 143, 148 (7th Cir.1995); *Williams,* 21 F.3d at 222; *Anderson v. Block,* 807 F.2d 145, 148 (8th Cir.1986); *E.E.O.C. v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir.1994); *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1208 (2d Cir.1993); *Kirkland v. Buffalo Bd. of Educ.,* 622 F.2d 1066, 1068 (2d Cir.1980). The court turns next to an examination of the discrimination claims raised by Dirks in her administrative complaint of discrimination.

### B. Claims Raised In Dirks' Administrative Complaint

J.C. Robinson asserts in its motion that Dirks has failed to exhaust administrative remedies on her claim that J.C. Robinson engaged in sex discrimination in the form of wage disparity. Dirks asserts that she did raise her Title VII sex discrimination claim in her complaint of discrimination before the Iowa Civil Rights Commission.

█ The record shows that Dirks did not explicitly raise her Title VII claim in her complaint of discrimination filed with the Iowa Civil Rights Commission. On September 14, 1993, Dirks filed a complaint of discrimination with the Iowa Civil Rights Commission and the EEOC. By checking boxes provided on the EEOC complaint form, Dirks noted that the sole basis of discrimination was "age." Dirks did not check the box provided for indicating "sex" discrimination.

However, this action, in and of itself, is not determinative. As this court remarked in *Hargens v. United States Dep't of Agric.,* 865 F.Supp. 1314 (N.D.Iowa 1994):

> The fact that a complainant failed to mark the appropriate box on an EEO complaint does not preclude the court from considering a claim in a subsequent lawsuit on the ground that it has not been exhausted in administrative proceedings, because such a conclusion would not be a liberal construction of the complaint and would not consider whether the claim can be "reasonably expected to grow out of the charge of discrimination." *Haithcock v. Frank,* 958 F.2d 671, 675–76 (6th Cir.1992). In determining whether a plaintiff has properly raised his charges at the administrative level so as to permit subsequent federal court jurisdiction,
>
> > the courts are guided by the principle that charges of discrimination, which are filed by law complainants, should not "result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading."
>
> *Id.* at 675 (quoting *EEOC v. McCall Printing Corp.,* 633 F.2d 1232, 1235 (6th Cir. 1980), and *Tipler v. E.I. duPont deNemours & Co.,* 443 F.2d 125, 131 (6th Cir. 1971)).

*Hargens,* 865 F.Supp. at 1325; *see Noreuil,* 96 F.3d at 259 (citing *Kristufek v. Hussmann Foodservice Co., Toastmaster Div.,* 985 F.2d 364, 368 (7th Cir.1993)). The Eighth Circuit Court of Appeals similarly observed last year in *Shannon:*

> Ms. Shannon rightly reminds us that courts should not use Title VII's administrative procedures as a trap for unwary pro se civil-rights plaintiffs. We agree, and therefore, when appropriate, construe civil-rights and discrimination claims charitably. This liberal-construction rule "stems from the rather fundamental policy that mere vagueness in a pro se claim should not sound the death knell for the plaintiff's discrimination allegation. "

*Shannon,* 72 F.3d at 685 (quoting *Pickney v. American Dist. Tel. Co. of Ark.,* 568 F.Supp. 687, 690 (E.D.Ark.1983)).

The text of Dirks' complaint of discrimination, however, clearly indicates that the sole basis of Dirks' charge is age discrimination. In her complaint of discrimination, Dirks wrote, "I believe my age (57) was a factor in the following incident (1) on 8–19–93 I was told by Ken L. Nielsen, Plant Manager, I was terminated because I said something wrong." Administrative Comp. at 4. Dirks, however, maintains that she did raise her Title VII sex discrimination claim before the Iowa Civil Rights Commission by means of a letter sent to the Iowa Civil. Rights Commission on October 1, 1993.

█ In the present case, the court finds that Dirks did not present, in her letter of October 1, 1993, a Title VII claim against J.C. Robinson for sex discrimination in the form of wage disparity. As the court indicated above, Dirks' complaint of discrimination specifically focused on age discrimination forming the basis for her termination. The thesis of her complaint of discrimination, as well as her October 1, 1993, letter, was that she was wrongfully terminated on account of her age. Although Dirks mentioned possible wage disparities in her letter of October 1, 1993, those comments were not the focus of her letter. Dirks offered her six page letter as a means of providing background regarding her employment at J.C. Robinson and her termination, not as an amendment to her administrative complaint before the Iowa Civil Rights Commission. Dirks wrote in the introduction:

> I feel this is an unusual case. I am sorry I cannot furnish statements, documents, witness names or witness statements. I hope this letter will be of benefit on my behalf.

> I would like to explain about the Belmond plant. I was the only woman employee working with 13 men, three of the men are older than myself and the others range in age from 21 to 43 years old.

Ex. 2–1. Dirks does not state in the letter that she wishes to amend her administrative complaint of discrimination to allege a sex discrimination charge against J.C. Robinson.

Indeed, she never mentions sex discrimination directly in the letter. Moreover, Dirks never directly mentions wage disparities in secretarial salaries at J.C. Robinson. Rather, over the course of six pages, Dirks makes two ambiguous observations regarding wages at J.C. Robinson:

> I was told the first year of my employment that yearly raises are not given without job reviews. In the spring of 1990 all male employees were given their reviews, but I received none. When I approached Ken about this he said, "You don't need one, you are doing a good job and I have no problems with your job performance." If I recall correctly I received a 3% raise that year. I was paid $5.00 per hour when I started in July 1989 and had been increased to $5.63 per hour when I was terminated. All the male employees start at $6.00 per hour with a raise every 3 months at the end of their first year they are making approximately $10.00 per hour.

> ...

> I asked for a raise on 2 different occasions and was denied both times. Ken was not at liberty to grant the raises to me without the permission of his boss, Steve Schmidt. Ken was upset when he couldn't grant me a raise saying he knew for a fact the person in Waterloo plant that was doing the same type of work at that particular time was drawing much more wages than I was, but of course he was a male.

Ex. 2–3. These two ambiguous references, in and of themselves, fail to set forth a claim that J.C. Robinson violated Title VII by engaging in sex discrimination in the form of wage disparity.

The court's conclusion that Dirks did not present a Title VII sex discrimination claim in her letter of October 1, 1993, is reinforced by Dirks' application for reopening. In her application for reopening, Dirks makes no claim of sex discrimination in the form of wage disparity. Instead, Dirks reasserts her claim of age discrimination and also seeks to allege a claim for retaliation:

> After reviewing the investigative report I would like to change my claim basis to retaliation. At the time of filing, *age was the basis I chose* as after my first interview

*age seemed to be the reason for termination.* I still feel this is an underlying factor. I truly didn't expect the company would admit to anything regarding age.

Application For Reopening at 1 (emphasis added).

The court also notes that the Iowa Civil Rights Commission's investigators did not investigate any claim of sex discrimination in the form of wage disparity. The investigative report notes that the discrimination claim being investigated is one for age discrimination. Furthermore, the Iowa Civil Rights Commission's investigation of the original charge could not reasonably be expected to encompass the claim of sex discrimination in the form of wage disparity. Dirks asserts that her inclusion, in her letter of October 1, 1993, of allegations of discriminatory wage actions on the part of J.C. Robinson should have put the Iowa Civil Rights Commission's investigators on notice of her sex discrimination claim. The court disagrees with Dirks' assessment. The two isolated comments in her October 1, 1993, letter to the investigating agency do not provide a sufficient predicate upon which one reasonably would expect the agency to investigate a claim of sex discrimination in the form of wage disparity. This is particularly true when the complainant does not again mention the basis for her sex discrimination claim in subsequent communications with the investigating agency. Here, upon receiving the Iowa Civil Rights Commission's decision regarding her case, a decision which makes no mention whatsoever of a claim of sex discrimination in the form of wage disparity, Dirks asked that her case be reopened but did not mention nor assert that she had or was asserting a claim of sex discrimination in the form of wage disparity. The court concludes that in the circumstances presented here, Dirks' claim of sex discrimination in the form of wage disparity was not directly presented to the Iowa Civil Rights Commission.[3] The question then becomes whether this court may nonetheless entertain Dirks' Title VII claim.

## C. Consideration Of Claims Not Raised In Administrative Complaint

The court must next determine whether or not Dirks' Title VII claim may be considered

---

**3.** The court's conclusion while not altered, is made more difficult, by the rather perplexing fact that the Complaint Investigative Report and the order of the administrative law judge denying Dirks' application for reopening both mention that sex was not a basis for Dirks' discharge. These references to sex are perplexing because the Iowa Civil Rights Commission did not investigate sex as a basis for Dirks' termination. Dirks does not contend otherwise. The Complaint Investigative Report unequivocally states that the incident under investigation is "[t]ermination due to age" and that the basis of the claim of discrimination is "age." Ex. 3–2. The focus of the investigation clearly was only on Dirks' claim of age discrimination. J.C. Robinson received a questionnaire which requested only general information and information related to age discrimination. J.C. Robinson responded to that questionnaire with a written statement which concerned only Dirks' allegation of age discrimination. The court notes from experience that when the Iowa Civil Rights Commission investigates a claim of sex discrimination it sends a questionnaire to the employer which focuses on information related to sex discrimination. No such action was taken here. Additionally, the administrative law judge found in her June 23, 1995, decision that there was no probable cause "to support the allegations of discrimination based on the Complainant's age." The administrative law judge, however, makes no reference to sex discrimination in that decision even though the attached investigative report contains the comment that "the respondent did not have the complainant's age or sex in mind at the time of termination." Ex. 34. Only later, in denying Dirks' application for reopening, does the administrative law judge mention that, "[i]t appears that the Complainant's discharge and the Respondent's actions leading up to her discharge were based on factors other than her age or her sex." Order Denying Reopening Application at 1. Thus, while both the investigative report and the administrative law judge do make reference to the conclusion that sex was not a basis for Dirks' termination, these statements constitute conclusions beyond the scope of the investigation before the Iowa Civil Rights Commission. Furthermore, and more importantly, the report and administrative judge do not make reference to a claim of sex discrimination regarding unequal pay. Even if the court assumes that the Iowa Civil Rights Commission did make a determination regarding whether sex discrimination played a role in Dirks' termination, the Iowa Civil Rights Commission clearly did not consider the sex discrimination claim Dirks raises here, that she was subject to sex discrimination in the form of unequal wages. Moreover, the court has grave reservations whether an employment termination sex discrimination claim is like or reasonably related to a claim of sex-based wage discrimination.

even though not explicitly raised in her complaint of discrimination. In light of the liberal interpretation of administrative complaints in aid of the remedial purposes of anti-discrimination legislation, the Eighth Circuit Court of Appeals has stated that in Title VII cases, "[w]e ... deem administrative remedies exhausted as to all incidents of discrimination that are 'like or reasonably related to the allegations of the [administrative] charge.'" *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir.1994) (quoting *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir.1986)); *accord Oates*, 116 F.3d at 1168 n. 7; *Seymore*, 111 F.3d at 799; *Yamaguchi*, 109 F.3d at 1480; *Cheek*, 97 F.3d at 202; *McKenzie*, 92 F.3d at 481; *Shannon*, 72 F.3d at 684; *Harper*, 45 F.3d at 148; *Farmer Bros. Co.*, 31 F.3d at 899; *Williams*, 21 F.3d at 222; *Malarkey*, 983 F.2d at 1208; *Boge*, 976 F.2d at 451 *Kirkland*, 622 F.2d at 1068.

■ The scope of the judicial complaint in a Title VII action has generally been construed to be limited not to the words of the complaint of discrimination but to the scope of the EEOC investigation which can reasonably be expected to grow out of the complaint of discrimination. *Harper*, 45 F.3d at 148; *Cobb v. Stringer*, 850 F.2d 356, 358 (8th Cir.1988); *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir.1985); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978); *E.E.O.C. v. Bailey Co., Inc.*, 563 F.2d 439, 446 (6th Cir.1977), *cert. denied*, 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 399 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970). "[T]he appropriate standard for measuring exhaustion is not those charges that the EEOC in fact considered, but those that were brought to its attention." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1112 (7th Cir.1992). Thus, the issue is whether Dirks' sex discrimination claim can be considered "like or reasonably related" or "growing out of" Dirks' allegations of age discrimination.

■ To determine whether allegations not specified in the complaint of discrimination are like or reasonably related to those

that are, a court inquires whether the incidents are within the scope of what the agency would reasonably be expected to investigate. As the Ninth Circuit Court of Appeals has observed: "The district court has subject matter jurisdiction over allegations of discrimination that either 'fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Yamaguchi*, 109 F.3d at 1480 (quoting *Farmer Bros.*, 31 F.3d at 899).

The Eighth Circuit Court of Appeals has discussed and applied the requirement that claims raised in a judicial complaint be like or reasonably related to those raised in the administrative complaint of discrimination in order to survive. Two of these decisions are instructive. In *Williams*, the plaintiff filed an EEOC complaint of discrimination based on race in 1987 against her employer, a municipal agency, following denial of a promotion which she had sought. *Williams*, 21 F.3d at 221. The EEOC concluded that there was no reasonable cause to support Williams' Title VII claim and issued Williams a notice of right to sue. However, she did not file a lawsuit at that time. *Id.* In 1990, after again being denied a merit raise and promotion, Williams filed a complaint of discrimination based upon retaliation. The EEOC again found no merit in the charge and issued the right to sue notice. *Id.* On this occasion Williams did file suit against her employer, alleging discrimination on the bases of race and retaliation. Williams' employer moved for partial summary judgment contending, *inter alia*, that the allegations of race discrimination set out in her complaint were beyond the scope of the EEOC complaint of discrimination which alleged only retaliation. *Id.* The district court agreed and the race discrimination claims were dismissed. In affirming the district court's ruling on the motion and finding that Williams' claims of race discrimination were separate and distinct from her claims of retaliation, the Eighth Circuit noted that "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive

**1314**

the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Id.* at 223 (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir.1985)).

Similarly, last year in *Shannon,* the Eighth Circuit Court of Appeals was confronted with the question of whether the plaintiff had exhausted her administrative remedies for a Title VII sex discrimination claim. *Shannon,* 72 F.3d at 680. In *Shannon,* the plaintiff, an assembler at an automobile plant, filed a complaint of discrimination in 1989 alleging race and sex discrimination concerning her treatment in an apprenticeship program. *Id.* The plaintiff had joined the apprenticeship program only after being placed on a waiting list for a supervisory position. *Id.* After obtaining a right to sue letter from the EEOC, the plaintiff brought suit against her employer for sex discrimination in violation of Title VII. *Id.* In addition to her charges related to the apprenticeship program, the plaintiff charged that she was wrongfully not promoted to a supervisory position. *Id.* The district court granted a motion for summary judgment in part and dismissed her failure to promote claim on the ground that it was not "reasonably related" to the sex-discrimination charges she filed with the EEOC. *Id.* Affirming the decision of the district court, the Eighth Circuit Court of Appeals concluded that

> In this case, Ms. Shannon's complaint with the St. Paul Department of Human Rights mentioned a "management test," but this reference is an insufficient hook for her failure-to-promote claim. Her alleged and actual mistreatment by her colleagues and supervisors in the apprenticeship program, which is run jointly by Ford and the UAW, does not translate into or even relate to Ford's alleged failure to promote her through the [supervisor selection program]. The apprenticeship and supervisor programs are completely separate, run by different people using different standards. Perhaps the bias which allegedly infects Ford's apprenticeship program also infects the [supervisor selection program], but we think the "reasonably related" standard requires more than this. We agree with

the District Court that Ms. Shannon failed to exhaust her sex-discrimination claim.

*Id.* at 685–86.

In this case, the court concludes that Dirks' claim of employment termination based on age discrimination is not sufficiently like or related to her claim of wage based sex discrimination while employed to be considered within the scope of this lawsuit. The facts brought to the administrative agency's attention present an insufficient basis for the agency to reasonably investigate a sexual discrimination claim grounded on a claim of wage disparity. The box indicating sex as the cause of discrimination was not checked on the complaint of discrimination, and the Iowa Civil Rights Commission and J.C. Robinson were not placed on notice that Dirks was alleging both sex discrimination in the form of wage inequality and age discrimination in her termination. Moreover, Dirks' October 1, 1993, letter does not raise the issue of sexual discrimination in the form of wage inequality. The language of the letter, reasonably read, does not identify the existence of sexual discrimination. In the course of a six page letter, reinforcing her age claim, Dirks makes only two ambiguous observations regarding wages at J.C. Robinson. It is not reasonable to infer a sexual discrimination claim in the form of wage disparity from these allegations. This is particularly true when Dirks' letter is considered in light of Dirks' application for reopening, which fails to make any reference to a sex discrimination claim but instead refers to Dirks' administrative claim as being one of age discrimination. Because the administrative agency could not reasonably be expected to investigate Dirks' sexual discrimination claim based upon two isolated allegations in a letter, the court concludes that Dirks has failed to satisfy Title VII's exhaustion requirement and her Title VII sexual discrimination claim must be dismissed.

### V. CONCLUSION

The court concludes that defendant J.C. Robinson is entitled to summary judgment on Dirks' Title VII claim on the ground that Dirks failed to exhaust administrative remedies on that claim. Dirks' Title VII claim for

sex discrimination in the form of wage inequality was neither raised explicitly in her complaint of discrimination nor in subsequent correspondence with the agency. Furthermore, the court concludes that Dirks' sex-based wage discrimination claim was not like or reasonably related to the claim of employment termination based on age discrimination that Dirks actually made in her complaint of discrimination. Therefore, J.C. Robinson's Motion For Partial Summary Judgment is granted and Dirks' Title VII wage based sex discrimination claim, Count I, is dismissed.

**IT IS SO ORDERED.**